Today we are going to do a separate video because a lot of you asked what my secret Hi Ms. Wilbert. Yes. You're reserving four? Correct. Go ahead. May it please the court, Johanna Wilbert, appearing on behalf of Appellant LaBaqu Kollegin and the University of Bern. It defies this court's precedent that a single sentence, in a single letter, could land too foreign defendants in U.S. court. No authority supports such an expansive view of jurisdiction. Thus, because jurisdiction is not foreign... But you put that stuff in the letter for in the first place. I mean, this was all about German patents being infringed. And once you put that in, I can perfectly see why the company might think this is a threat to enforce our American patents against you too. I mean, it seems like it's your fault for putting that sentence about the American patents in here that you've gotten hauled into a declaratory judgment action. Under the court's precedent in Red Wing and its progeny, a single reference in a single letter is not enough. What about the Jack Henry case? Are you familiar with that case? No, I'm not, Your Honor. Okay. That's a case that was decided in 2018 and it specifically addresses Red Wing. And it says Red Wing is not a bright line rule and that Supreme Court precedent requires assessment of the Burger King factors in each case. Yes. And I think a way to address that is to look at the totality of the contacts and the burden on the parties. But your reliance on Red Wing as creating a bright line rule, it doesn't exist. So how does that not undermine your entire basis here before us? Sure. I don't think Red Line has to take a single hard line rule, but it is an example. And I think consistent with that, if you look at the contacts that the parties have with the United States, you would see why one reference is not the other activities in this court's three-part jurisdictional analysis. Well, what is your analysis of the Burger King factors? Obviously, the first Burger King factor favors your argument, but what about the others? Sure. So, even in looking at a forum's interest in adjudicating the dispute, it would be important as this court has looked at to see the contacts that the parties have with the forum. And the issue here is that the German defendant, Lobachlin, only has contacts with the U.S. licensees that it has. So it was a mistake. What about the forum's interest in adjudicating this U.S. patent dispute? This is the only place, only in the United States, could a U.S. patent dispute be adjudicated. I believe in this case, the burden on the defendants, the first prong, is significant and outweighs the other factors. Okay. Are there other factors that weigh at all in favor of the defendant? Our position is that it's the significant burden on the two foreign defendants that would control the Burger King analysis. And that folds into the three-part analysis, if you look at prong three, that this court has applied. I mean, you loosely talk about the burden, but what do you mean in terms of burden? Just being required to appear in an American court? And the language barrier, and the fact that there are two different countries. But you have an American patent. If you were ever going to enforce that American patent as you, you know, I don't want to overread your letter. You at least mentioned it in your letter. If you were ever going to follow through and enforce it, then you would have to go through all of those steps. So I don't see how those are necessarily all that much of a burden in the context of a declaratory judgment on that same patent. I would argue it's the difference between a declaratory judgment act and an action by the party seeking to enforce. So the difference here is that this is a one-sentence in a six-page letter, and— Right, but I mean, maybe I wasn't clear, but the burdens you're talking about in terms of language and presumably foreign travel and all kinds of stuff like that, those don't— you would have to give those up if you were trying to enforce that patent here. You would have those same burdens, but they wouldn't have any relevance to the case. Looking at due process and how this court has analyzed what is fair and substantial context, it requires the court to actually look at context with the forum residents. And what happened in the case below, and this is around 310 in the appendix, is that the court relied on Labaquinn's relationship with the University of Bern, that license agreement. And that was an error because that license agreement is not with any of the forum parties. So Switzerland— But instead, to, quote, sell a licensed product in North America within 12 months, which includes numerous countries and territories. Did Labaquinn affect a sale? It's my understanding that Labaquinn doesn't deny on the record that it made sales in the United States. No, Labaquinn has not affected sales, and the appropriate places— So is the lower court's finding of 309 wrong? Yes. If you look at the evidentiary hearing, the testimony is that the business Labaquinn does within the United States is through its sub-license agreements, and that can be found on page 350 of the evidentiary hearing. So it has licensed the patent? Labaquinn has entered into two sub-licenses that are non-exclusive and do not contain enforcement rights. And there has been no recruitment of any royalties whatsoever under those sub-licenses? There's been approximately $2,000 recouped, but there has not been a direct sale by Labaquinn into the United States. And as this court said in Red Wing— But they have engaged in commercial activity in the United States involving some monetary recoupment? Through the two licensees, and that limited use is described at page 350. Why isn't that enough to make the university, the owner of the patents, subject to jurisdiction here? In Avocent, this court said it's important to look at other contacts with the forum that relate to enforcement in the circumstance where there's only a letter with a single reference. And that goes to the fairness prong of if there's only a one-letter reference, you should look at other enforcement activities such as, has there been other litigation? Has the party traveled here? Is it a patent trial where it's purporting to say that my business is enforcing? Those factors don't apply here. Labaquinn has not traveled to the United States for purposes of enforcement. It has not engaged in any other enforcement activity throughout the United States. And its business— Let me just, hypothetically, because I don't know where I can go on this, but let's just assume that the letter you sent, you know, that was primarily about the German patents, is sufficient to, you know, it would meet a declaratory judgment standard, and it's sufficient to be a threat of enforcement activity. Is there a difference as how that we would have jurisdiction over the university versus Labaquinn in that context? Getting away, I know you want to rely on the single sentence, but let's assume that that single sentence is enough for purposes of threatening a civil action. Absolutely. You bring up an excellent point that jurisdiction over the university is a different analysis, and that analysis focuses on the sovereign immunity. The University of Bern is an instrumentality of Switzerland, and the court made two errors when evaluating sovereign immunity. It first erred when it stated that the university had waived sovereign immunity by proxy, and the second error is in holding that the university's consent to the letter had a direct effect in the United States. With respect to— But the university is engaging in commercial activity here, right, through Labaquinn licensing the university's patents? It's three steps attenuated. So the university does not have any— But they have—but the university retains all the authority here, right? No, it does not retain all authority. There's actually a particular— Can Labaquinn institute an enforcement action? Can they file an infringement suit without the university's consent? No, they cannot. And they can't even send a letter without the university's consent, right? Correct. It appears that under Labaquinn's view, it should be free to commercialize the 114 patent in the United States, including negotiating for licenses with entities like PBG, by sending, for example, strongly worded cease and desist letters, demanding as much, without being subject to a suit in any state. How does that seem reasonable or fair under our precedent? I don't think the facts are consistent with your analogy, and that's why I don't think it would be consistent with this precedent. The letter is not as focused on the U.S. enforcement as your scenario describes. Yeah, but can you just take that as the hypothetical? Let's not talk quibble about the facts, because this is a difficult jurisdiction. The letter—let's just assume the letter is, for our purposes, sufficient to threaten litigation in the United States, that your client's letter threatens competitors with enforcement of the American patent. Do the jurisdictional analysis then. Doesn't the Burger King factors away in finding of jurisdiction over Labaquinn? I would argue no, because of this court's precedent in New World, Avocent. In those cases, the court looked very closely at the license agreements that were in place. I want to ask you something else, just to make sure I understand. I understand that the court below held that there was declaratory judgment jurisdiction, that there wasn't sufficient threat for there to be a jurisdiction here, and that you have not raised that issue on appeal. Do I understand that correctly? Yes, you have. Okay. So we're focusing on the other contacts that we understand are required, and this court has looked at other contacts with the forum residents, so other contacts with the U.S. residents. In New World and in other cases, they've analyzed, do those license agreements contemplate or create an enforcement obligation in the U.S.? Is it Labaquinn's position that it's not commercializing in the United States? It's Labaquinn's position that it is not directly commercializing in the United States, and that doing business... You're asking my question. Well, who's commercializing in the United States then, if you're licensing these patents? And where's the money going? It's either you or it's the university. I understand the testimony is that one of the license agreements was with the University of California. My understanding is they're not commercializing, and that the other license agreement has only resulted in $2,000 worth of royalties. Do we usually look at the amount of royalties to determine whether somebody has been commercializing in the United States? No, but you do look at the context of if there's an enforcement obligation. So here, this is a pass-through royalty-generating license, and in circumstances like Avocent, that has been held not to be enough. And I would like to point quickly to the sovereign immunity... You're in the rebuttal time, but you can keep going. I want to ask you a question about state sovereign immunity. I know that you're relying on principal agency relationship to assert that the cease and desist letter can't be imputed to the university, but there's other agency relationships that could apply. For example, joint enterprise, right? That was not analyzed, and that's an error below. Was it raised? The parties did not analyze... Then why would it be an error? Because to find that sovereign immunity has been waived, there must be an exception on the grounds of what it's waived under. So for the court to say that there has been a waiver, there must be some analysis explaining why there's been a waiver. That's fine. You rely on appeal, you're arguing that there's no principal agent relationship, right? That wasn't analyzed below either, right? The phrase by proxy, we are interpreting that as some type of analysis. Was it argued below? Yes, it was argued below. The principal agent was argued below. Was it discussed in the court's opinion below? I want to understand. So what was argued below is that the university does not have action that would have qualified under the commercial exception, and in response to that, the court said that there was waiver by proxy, is the phrase that was used. And so on appeal, for the first time, you're arguing the principal agent relationship based on the language in the district court's opinion, right? No, we argued below that there was not waiver because the direct, the consent to the letter was not a direct action and that the parties are separate. We've always argued that they are at arm's length two separate companies, the German company and the university. So my question to you originally was, you are arguing on appeal that there's no principal agent relationship, but wouldn't another by proxy relationship be joint enterprise? We do not believe so. And why not? Because here there is not a joint enterprise being formed. The German company has a separate business from the university. The university is a non-profit university. The German company is a veterinary laboratory, and they do not have a joint enterprise with respect to how they're behaving. There is an agreement between them, right? There is a license agreement. And is there a common purpose to be carried out by them in the context of that agreement that is commercializing in North America? We believe they have different interests because the university has retained research rights. The licensee has its own business interests, so we do not believe they are completely aligned. Does money flow to the university? Yes, money does flow to the university. Do they have an equal right and a voice of the direction of where the, you know, who they're going to send a letter to, a cease and desist letter to? They both have a voice of who they send the letter to, but as Dr. Mueller's declaration shows at page 94, Lava Klint does not actually have an obligation to commercialize in the United States, and she is the one directing the action here. So it is not, in this circumstance, in this factual scenario, an equal voice. I'd reserve any remaining time. Thank you. Well, I'll let you have two minutes. May it please the Court, Mark Walters on behalf of Genetic Veterinary Sciences, Inc., doing business as Pop Print Genetics, or PPG. On page four of the gray brief, Lava Klint cites the Supreme Court case Colco and states that the prong in Burger King of a fair, the notion of fair play and substantial justice, that that's not susceptible to mechanical application, but then they go on to do a very mechanical application of the court's precedent, this court's precedents, including Silent Drive, Avocent, Red Wing Shoe, and Breckenridge, and I can summarize it as follows. They require in the other activities, in order for the jurisdiction to be fair and reasonable, according to my friend, there must be some sort of exclusive license or absolute right to enforce the patent in the forum, but it's not so mechanical, and the Supreme Court cautions against that kind of mechanical approach. According to the law, the minimum contacts are satisfied by the cease and desist letter, and what that does is it creates a presumption that the jurisdiction is reasonable under that prong in Burger King, and so where the minimum contacts are satisfied like they are in this case, the question has to be asked, is the defendant engaging activities with respect to the forum such that they are shielded by the benefits and protections of that forum state's law, and I think in this case they clearly are. They're undertaking to commercialize the patent in the United States. They have two licensees here. I don't think the substantial magnitude of the revenue matters or is relevant. The fact that they are engaging in a commercial enterprise from Germany to collect revenue and enforce, cooperate in enforcement here in the United States. If their licensees violated the license agreement, enforcement would lie in the United States. That is absolutely correct, Your Honor, and the idea in the gray brief, they mentioned the fact that the license agreement talks about North America, but the only way to really commercialize a U.S. patent, of course, is in the United States. There are obligations for enforcement, and I think... The difference in numerous countries in North America, numerous means three. Correct, Your Honor, and I mean, the United States is the key market. There was some suggestion in the gray brief about whether there was a viable market, and there's some question about that. I mean, it really comes down to looking at that license agreement and asking whether LabOakland is obligated by the terms of that agreement to engage in commercial activity in the United States in a way that would fall within the scope of the claims of the licensed patent, and clearly they are. I think the argument was that because it refers to North America, it doesn't necessarily mean that they were tasked with operating in the United States, right? That's what they're arguing, as I understand it, because North America includes other locations. That's right, Your Honor, but again, the only way to commercialize a United States patent is to engage in commercial activity in the United States. The United States patent doesn't have any application outside of the United States. So Your Honor... Are there patents in... Are there other patents in North America other than the United States patent? Does this license agreement cover other patents? Yeah, does it cover anything in Canada or Mexico? I believe it does, Your Honor. It was sort of licensing a portfolio that would have that, and that's why I think the language was chosen the way it was. But I think what's really going to be helpful for the court is to look at this case. I want to address the burgeoning factors really quick, Your Honor. I think the first three really fall very heavily in our favor. Judge Hughes brought it up with respect to... You think the burden on defendant, which is the first factor, falls in your favor? I absolutely do, Your Honor. And Judge Hughes, I kind of gather he might think that way too. I wouldn't gather anything from our questions here. Well, Your Honor, I apologize for that. But what I gather from it, then, is that the defendant's burden in this case is the same. They are a foreign licensor. But they didn't choose to file the suit, right? Correct. I mean, it seems a little odd to me that a brief reference to a United States patent in a letter that was really about infringing German patents is enough. I mean, honestly, this whole litigation frustrates me because it seems like you're both wasting our court's resources. Them by putting the sentence in, and then you by overreacting and filing a declaratory judgment action based upon this one reference to an American patent when they were complaining about German patents. I mean, did you really need to do this, or could you have waited until you actually got sued over the American patents? Maybe you never would have. And then we would never have had to have been here in the first place. Well, Your Honor, that issue, of course, as the court points out, was not raised on appeal. I know. But it's really frustrating that you overreact to one sentence in a cease and desist letter about a German patent, or a group of German patents, and rush off and file a declaratory judgment action, which takes up the party's resources, the district court's resources, and our court's resources over something that may never have happened in the first place. Well, Your Honor, my client makes decisions on what business to go into. And when their business is threatened by this one sentence or 24 sentences, that is something that they have to deal with. And they're faced with a decision to make. Do I put more investment into this business and risk some liability, or do I get a determination from a court? They couldn't go to anywhere else. Did you raise a single issue below? Pardon me? Did you raise a single issue below, just 101 validity? We did. We tried to make this as streamlined as possible. We admitted to infringement, Your Honor. If that sentence hadn't been in this letter about German enforcement, you couldn't have filed the declaratory judgment. I'm not sure that's correct, Your Honor. There are multiple factors that would, I think, give— You think a letter into the United States saying, we own this German patent, you're infringing it, you need to stop sending product into Germany, would allow you to go after an unmentioned, unraised American patent? If we assume that that's the only thing that might implicate my client's business, then I think maybe there are probably no case or controversy. But that, of course, is not the case, and the analysis goes beyond that. Right. There's a sentence in that discussing the American patent, and I get it. You can infer from the letter that they're threatening enforcement of this American patent because they're threatening enforcement of the German patent. I get it. But it seems to me a little bit of an overreaction. Was there further communication? There was, in an attempt to resolve, but it just couldn't get resolved, Your Honor. Is that in the record? I don't believe so. Okay. Yeah. Well, I thought it was in the record that once you got this letter, you threatened not only to file a declaratory judgment action if they didn't stop this, but that they had to pay you $30,000. Well, I think that particular letter, which is not relevant to any issue on appeal, had to do with fees expended in determining under the German patent. We had to hire German counsel at that point to figure out whether the law was the same in German. Right. So in responding to a legitimate complaint of infringement of a German patent, you threatened fees, and if they don't pay your fees to do that, you're going to invalidate their American patent. I don't believe it was quite like that, Your Honor. I mean, I believe the issue is you, in this letter, raised this issue of the U.S. patent. We need to figure out a way to resolve both issues now, and so, Your Honor, I want to turn, if I may, to— So you were going to talk about the burden on the defendant? Correct. So besides the language barrier, which was mentioned by opposing counsel, how do you deal with that? Language barrier, being hauled into a foreign court? The Supreme Court in Asahi talked about how that puts a significant burden on a foreign defendant. Your Honor, I think that there's a case from this court that's instructive on the burden on the defendant, and that's the Zilinks case. It is, I believe, a 2018 case. I don't know if I'm saying the name correctly. It's X-I-L-I-N-X-848-F-3rd-1346. It discusses this particular factor, and in that case, there was a German patentee, and there were notice letters sent, and the analysis was that those notice letters satisfied the minimum contacts prong and made it presumptively reasonable that the German company would be subject to suit here, and the analysis of the Burger King factors in that case concluded that the burden on the defendant would be minor because they have to come to the United States in any event to enforce the patent. So that does weigh pretty heavily in our favor, I think, in this case. And if you look at the other factors, we list them on page 17 of the red brief. The form states interest in adjudicating the dispute and the plaintiff's interest in obtaining convenient and effective relief. We would have no ability to obtain relief in this particular case if they are correct in their argument, and similar the implications of a decision from this court that would rule that in this particular case, LabOakland's not subject to jurisdiction would have implications beyond this case. And so whether you agree with the facts of the case or you're not happy with how it arose, it has implications beyond this particular case and these parties. Now, I want to move with the remaining parts of my time to the issue of sovereign immunity. There are basically three ways to waive sovereign immunity under section 1605A2. The first is where your cause of action is based on a commercial activity carried out by the foreign state in the United States. The second way is where you're cause of action is based on an act performed in the United States in connection with a commercial activity of the foreign state elsewhere. And the third way is where there's an act outside the United States in connection with a commercial activity of the foreign state elsewhere, and that act has a direct effect in the United States. The district court cited the Intel case and reasoned that the university threatened litigation against PPG by proxy through LabOakland. And it wasn't clear from the district court's analysis if they were relying on Clause 1 or 2. But I think if you look at the Intel decision and that case, which involved this Australian resource organization, in that case, that resource organization's attempts to secure patent licenses in order to generate royalty income was not an activity peculiar to the foreign state, but it was instead a commercial activity that a private entity would engage in. And I think the same analysis applies here. The fact that the university obtained a United States patent and then entered into an agreement with LabOakland for the express purpose of commercializing that technology in the United States, that particular activity is considered a commercial activity within the Intel precedent. What about the by proxy language? How do you understand that? Does that impute agency law? Pardon me? Does that require us to consider agency law? By proxy. What do you understand the by proxy to mean? I don't know what the district court meant by by proxy. It wasn't an argument that we made. I mean, the argument that we made was that the university... Did the university make that argument? I'm not sure, Your Honor. I don't recall. But the argument that we made was that the university is engaging in commercial activity in Germany that has a direct effect here, or by obtaining a patent and then entering into a license with LabOakland, who then used the patent here. Either of those scenarios would, I think, result in an exception or a waiver of the immunity under the Foreign Sovereign Immunities Act. What's your view on whether there's a joint enterprise between the university and LabOakland? Right, Your Honor. I mean, there's clearly an agreement here between them with a common purpose of obtaining royalty income. They are, under the agreement, both tasked with enforcement. They are under the agreement, or LabOakland is under the agreement, tasked with commercialization. So I think that they both have an interest in it. You haven't mentioned control, either. Right. That is, the university shares control. Correct. The university does share control, which would also feed into the analysis of a joint venture. So I think the sum total of this is this particular situation where you have a patent holder abroad and a licensee abroad. When they engage in activity to commercialize a patent in the United States, they're subject to jurisdiction here. We went to the Eastern District of Virginia because that's where we were required to go in order to obtain long-arm jurisdiction. And where else can we go? That's the only place we can go if we want to have this issue resolved. Appreciate the court's time. And if there are no further questions, I'll yield. Thank you. Thank you, counsel. Two minutes. Thank you. I'd like to address some of the questions that you raised. You asked where the agency relationship was argued below. It was argued below at the evidentiary hearing on Appendix page 358. And that argument was made by Lavaklin, and it explained that there is not control here, that there would be establishing an agency relationship. With respect to the joint enterprise issue, I'd like to direct this court's attention to two cases that provide persuasive authority. Foremost, McKesson v. Iran. It's Site 905F2nd 438. And that is a situation where the parties did have business. It was a dairy farm. But the court remanded because they needed to determine whether there was a principal agency relationship. Was that this court? No, it's not. It's persuasive authority out of the D.C. Circuit. Also, I could direct you to a Second Circuit case, which would also be persuasive authority, that addresses ERISA. And it says that even if ERISA would show that there was common control, it was still necessary for there to actually be a relationship with the parties. So to waive sovereign immunity, the idea here is that it's a significant matter, and that it needs a principal agency relationship. It cannot be waived by the actions of a wholly separate entity, which Lavaklin is from the university. Did you give us a site for that second case? I believe it's in our briefs, but the site is 7F3rd 35 2nd Circuit. With respect to if there's been any other communications between the parties before the lawsuit was filed, the first letter was sent by Lavaklin, and then the declaratory judgment complaint was filed on February 22, 2017. That complaint, that signature page, is found on page 55 of the appendix. The response letter is also in the appendix, and that's found at page 50. And that response letter came after the declaratory judgment action was filed. And there was no other communication? There's no communication between the time of sending the letter and filing the declaratory judgment action. There has since been communication since the lawsuit started. Good times, though. Thank you. Thank you. All rise. The honorable court is adjourned until tomorrow morning at 10 a.m.